

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IVAN JAZBEC and NADA JAZBEC, | ) | |
| Plaintiffs, | ) | Case No. 08 CV 7275 |
| v. | ) | Judge John W. Darrah |
| ROBERT HIRSCH, HEDY HIRSCH, MEI LIMSUI, NORTH SHORE INVESTMENT ASSOCIATES, RDH ASSOCIATES, HIRSCH ENTERPRISES LTD., INVESTMENT ASSOCIATES, OTHER UNKNOWN INDIVIDUALS and OTHER UNKNOWN or UNNAMED ENTITIES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law for alleged fraud and other wrongdoing in connection with Defendants' purchase of Plaintiffs' residence in Wilmette, Illinois. Defendants Robert Hirsch and Hedy Hirsch and Defendant Mei Limsui have filed motions to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Nos. 41, 44.) For the reasons stated below, the motions to dismiss are granted.

## LEGAL STANDARD

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) if the factual allegations of the complaint, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69 (2007) ("*Bell Atlantic*"). In considering a motion to dismiss

1

under Rule 12(b)(6), all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004). "A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). However, "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1068-69). If the complaint fails to provide such allegations, "the plaintiff pleads itself out of court." *Id.*

Furthermore, Fed. R. Civ. P. 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In a RICO action, "the complaint must, at a minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (internal quotations omitted).

## BACKGROUND

Plaintiffs' Amended Complaint alleges that Defendants Robert Hirsch, Hedy Hirsch, Mei Limsui "along with various other unknown individuals, carried on as co-owners of a business engaging in numerous Real Estate transactions for profit." (Am.

2

Complt., ¶ 7.)

The Amended Complaint alleges that on or about June 5, 2003, Plaintiffs Ivan and Nada Jazbec were the owners of real property located at 2218 Iroquois Road in the Village of Wilmette. (*Id.*, ¶ 15.) On or about June 5, 2003, Plaintiffs listed the Iroquois property for sale. (*Id.*, ¶ 16.) On or about February 19, 2003, Robert Hirsch "did individually or as an agent of North Shore Investment Associates, RDH Associates, Hirsch Enterprises, Ltd., Investment Associates, or other known, dissolved, fictitious, or de facto entities" make a written offer to purchase the Iroquois property from Plaintiffs for $850,000.00. (*Id.*, ¶ 19.)

The same day, Hirsch, individually, approached Plaintiffs with a separate agreement, identified as a rider to the real estate contract, in which Hirsch proposed terms related to financing his purchase of the Iroquois property. The rider included the following terms: (a) $600,000.00 of the purchase price be paid at closing; (b) the $250,000 balance of the purchase price be paid on or before twelve months following closing; (c) any unpaid balance remaining after twelve months following closing be secured by a subordinate mortgage and non-interest-bearing note payable to Plaintiffs; (d) in the event the subordinate mortgage were needed, Hirsch, individually or as agent of North Shore Investment Associates, RDH Associates, Hirsch Enterprises, Ltd., Investment Associates, or other unknown, dissolved, fictitious or de facto entities, would provide the Iroquois Road property or other improved residential property as collateral; (e) in the event another improved residential property is used as collateral to secure a subordinate mortgage, said property would have an equity value that was at least equal to

any unpaid balance owed to Plaintiffs; (f) at no time shall any form of financing be used that reduces the equity value of any property used to secure any outstanding balance owed to Plaintiffs. (*Id.*, ¶ 20.)

On or about February 19, 2003, Plaintiffs executed a valid and binding contract to sell the Iroquois property to Hirsch and the separate agreement identified as a rider to the contract ("rider"), obligating Plaintiffs to the terms stated above, including the obligation to provide $250,000.00 in seller financing to Hirsch. (*Id.*, ¶¶ 21, 22.)

Plaintiffs conveyed the Iroquois property to Hirsch on or about June 5, 2003, and provided $254,000.00 in seller financing pursuant to the terms of the real estate contract and rider. However, Robert and Hedy Hirsch, individually or as agents of a partnership, failed to make any payment or secure any part of the $254,000.00 amount owed to Plaintiffs.

Plaintiffs allege in their Amended Complaint that Robert Hirsch made fraudulent representations to them and other sellers and fraudulently posed as an experienced business person with particular expertise in real estate to gain their trust and reliance. After convincing Plaintiffs and other sellers to sell property to him, Robert Hirsch then used their trust "to exert his influence over the transactions, and to convince the sellers to partially finance his purchase of their homes by providing seller, or third-party financing." (Am. Complt. ¶ 80.) Hirsch then allegedly obtained "higher priority financing" on the properties through another member of his in-fact association, including Defendant Mei Limsui, and intentionally defaulted on his financing agreements and subsequently seized the properties in foreclosure (through the association in-fact,

including Defendant Limsui). Plaintiffs' Amended Complaint identifies twelve other residential properties purchased by Hirsch pursuant to this fraudulent scheme, eleven of which allegedly resulted in foreclosure. (Am. Complt. ¶ 8.)

Arising from these facts, Plaintiffs bring the following state-law claims against all of the named Defendants: a claim under Illinois partnership law for the wrongful acts or omissions of an agent of a partnership (Count I); breach of contract (Count II); breach of promissory note (Count III); common-law fraud (Count IV); and a claim under Illinois's Consumer Fraud and Deceptive Business Practices Act (Count V). In addition, Plaintiffs allege two civil RICO claims pursuant to 18 U.S.C. § 1962(c): Count VI (a RICO claim based on an "Association In-Fact") and Count VII (a RICO claim based on "Unlawful Conduct of a Partnership or Other Legal Entity").

## ANALYSIS

The Hirsches and Limsui both contend Plaintiffs' Amended Complaint fails to allege the elements of a RICO claim and that the Court should dismiss Plaintiffs' RICO claims and decline to exercise supplemental jurisdiction over the state-law claims.

Title 18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with [an] enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A RICO plaintiff, alleging a violation of 18 U.S.C. § 1962(c), must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). A RICO plaintiff is required to allege sufficient facts to support each element of its RICO

claim; "[i]t is not enough for plaintiff to simply allege these elements in boilerplate language." *Cobbs v. Sheahan*, 319 F. Supp.2d 865, 869 (N.D.Ill. 2004).

The "first rule" of pleading any RICO claim is that the "plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (*Jennings*). Any RICO enterprise must consist of more than a group of people who allegedly got together to engage in RICO activities. *Jennings*, 910 F.2d at 1440. That is to say, the enterprise must be "distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society." *Id.*

The Amended Complaint alleges Robert Hirsch perpetrated the fraudulent conduct described above; Hedy Hirsch is alleged to have "posed as a straw or other buyer for the in-fact association, purchasing properties . . . [and] intentionally defaulting on any financing used in the purchase" (Am. Complt., ¶ 82); and Defendant Limsui is alleged to have "acted as the financier of the in-fact association, lending money or otherwise arranging for or providing financing to other members of the in-fact association for the purchase of properties." (Am. Complt., ¶ 84). Even giving the Amended Complaint the liberal reading it is due, however, these allegations are insufficient to allege a RICO enterprise. At the most, the allegations show that the Defendants acted collectively to defraud Plaintiffs and other sellers to acquire their properties through foreclosure. But pleading a RICO enterprise requires more than merely pleading a conspiracy to defraud. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000) ("When we liberally construe the allegations in the

amended complaint, the most Appellants may be able to establish is a pattern of racketeering activity through the purported scheme to defraud consumers. To withstand Appellees' motion to dismiss, however, Appellants must present something more that this and assertions of conspiracy; otherwise, 'every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation.'") (quoting *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). Pleading a RICO enterprise requires that "[t]he RICO person must have committed the crime or fraud while conducting the enterprise's affairs, not merely its own business." *Okaya (USA), Inc. v. Denne Industries, Inc.*, Case No. 00 CV 1203, 2000 WL 1727785, at *3 (N.D. Ill. Nov. 20, 2000). Further, there must be an ongoing structure outside of the alleged predicate fraudulent acts. *See id.*, at * 4.

Both of these requirements are lacking. Plaintiffs have not alleged that Defendants' fraudulent actions served any purpose other than for the Defendants' own individual gain. The Amended Complaint, read liberally, explains the roles of each Defendant in the alleged fraudulent scheme; however, it does not identify any enterprise or structure outside of the alleged fraudulent acts or how Defendants' activities benefitted the enterprise itself. Accordingly, Plaintiffs' Amended Complaint fails to sufficiently allege the existence of a RICO enterprise.

Defendants also contend the Amended Complaint insufficiently alleges a pattern of racketeering activity. In order to demonstrate a pattern of racketeering activity, a plaintiff must allege that the defendants engaged in at least two predicate acts of

7

racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Not all crimes or misdeeds constitute racketeering activities; only those offenses set forth in 18 U.S.C. § 1961 qualify. For example, common-law fraud does not constitute a predicate act. *Davit v. Davit*, 366 F.Supp. 646, 656 n. 11 (N.D. Ill. 2004).

Here, the only predicate acts alleged in the Amended Complaint are acts of mail and wire fraud. (*See* Am. Complt, ¶ 87.) The Amended Complaint alleges twelve instances where Defendants Robert and Hedy Hirsch placed in the post office or "cause[d] to be deposited" various correspondence connected with the property transactions identified in the Amended Complaint, allegedly made pursuant to Defendants' fraudulent scheme. (*See* Am. Complt, ¶¶ 89-100.) The Amended Complaint also generally alleges that Defendants transmitted, or caused to be transmitted, various wire communications. (*See* Am. Complt, ¶¶ 102-104.)

As noted above, Rule 9(b) of the Federal Rules of Civil Procedure requires a party, alleging fraud, to state "with particularity the circumstances constituting fraud." This heightened pleading requirement applies to civil RICO claims that are predicated on mail and wire fraud claims. *Goren v. New Vision International, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) ("*Goren*"). At a minimum, the complaint must describe the predicate acts with some specificity and the time, place, and content of the alleged communications perpetrating the fraud. *Goren*, 156 F.3d at 726. Generally, Rule 9(b) requires that a plaintiff plead the "who, what, where and how" of fraud. *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Furthermore, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged

participation in the scheme." *Goren*, 156 F.3d at 726.

Plaintiffs' Amended Complaint does not satisfy Rule 9(b). Although the specificity requirements for pleading fraud can be relaxed if details about the alleged fraud are within the exclusive knowledge of the defendants, *see Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994), the basis of Plaintiffs' RICO claims in this case are that Defendants' defrauded them and others into selling them properties, using seller financing, and then intentionally defaulted on the financing so that the properties could be acquired in foreclosure. Even if the specifics as to the mail and wire communications that were made in furtherance of this alleged fraudulent scheme are within the exclusive knowledge of the Defendants, at a minimum, Plaintiffs should know the "who, what, where and how" of the fraudulent communications Robert Hirsch (and/or other Defendants) allegedly made to them. Plaintiffs have failed to provide such specifics. In addition, under Rule 9(b), Plaintiffs must plead sufficient facts to notify each Defendant of his alleged participation in the alleged scheme. The Amended Complaint, alleging only that Hedy Hirsch "posed as a straw or other buyer for the in-fact association" and that Defendant Limsui "acted as the financier," does not plead with sufficient specificity the role in the fraudulent scheme allegedly taken by Hedy Hirsch and Limsui. In sum, Plaintiffs have not pled fraud with the particularity required by Rule 9(b).

## CONCLUSION

For all of the reasons stated above, Plaintiffs' RICO claims in Counts VI and VII fail to state a claim upon which relief may be granted. Even if the pleading deficiencies identified above could be remedied, Plaintiffs have failed to allege the existence of a RICO enterprise, justifying dismissal of the RICO claims. *Richmond*, 52 F.3d at 646. The RICO claims are hereby dismissed. There being no federal claim remaining in the case, the Court declines to maintain supplemental jurisdiction over Plaintiffs' remaining state-law claims; the state-law claims are, therefore, dismissed without prejudice.

Date October 14, 2009

JOHN W. DARRAH
United States District Court Judge